IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 24-13 |
| | : | |
| RASHELL ORTIZ | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT OPINION TESTIMONY IDENTIFYING THE SPEAKER IN RECORDED CONVERSATIONS**

Should a law enforcement officer tasked with the primary investigation of a criminal case, who had, many months before trial, engaged twice in just a few minutes of dialogue with the defendant, be permitted to opine to a central question to the jury determination: Is the voice in a video that of Ms. Ortiz? The answer is no. Such testimony would violate both Ms. Ortiz's due process rights and Federal Rules of Evidence 701 and 403.

The government seeks to admit the testimony of two law enforcement officers, Special Agent Joseph McGinn and Task Force Officer Kevin Larkin, who will identify Rashell Ortiz as the speaker in various videos describing certain bags for sale ("the bag videos"). *See* Gov't Mot. 1 (ECF No. 16). The government argues such testimony is admissible pursuant to Federal Rule of Evidence 901(b)(5), which allows the admission of an "opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." *See id.* at 4. The basis for the agents' identification, according to the government, is Special Agent McGinn's "interview[ ] [of Ms. Ortiz] over the telephone during the investigation" and both agents' interaction with Ms. Ortiz "in person at the time of processing after her arrest" on January 12, 2024. *Id.*; *see also id.* at 6 ("Special Agent McGinn has spoken with the defendant on the telephone on two separate occasions."). Additionally, the agents "have had the

opportunity to review other videos from Ms. Ortiz's iCloud that depict her face while she is speaking." *Id.* at 4; *see also id.* at 6.

The agent's direct contact with Ms. Ortiz is far more limited than the government suggests. Under information and belief, Special Agent McGinn spoke with Ms. Ortiz on the phone *once*, on February 8, 2023.[1] That call—hardly an "interview"—lasted just a few minutes, during which time Ms. Ortiz, for the most part, refused to speak with the agent. Also, upon information and belief, Special Agent McGinn was the only officer present at Ms. Ortiz's self-surrender; TFO Larkin was not present, and, unless listening in on the February 8, 2023, phone call without Ms. Ortiz's knowledge, he has never heard Ms. Ortiz's voice other than on a video recording.

Even if the agents' testimony is admissible under the "low bar of minimal familiarity" of Rule 901(b)(5), *United States v. Cruz-Rea*, 626 F.3d 929, 935 (7th Cir. 2010), that does not mean it is not barred for constitutional reasons or by other rules of evidence.[2] And here it is. The

---

[1] The government represents in its motion that "Special Agent McGinn has spoken with the defendant on the telephone on two separate occasions." Gov't Mot. at 6. However, the government has since represented to defense counsel that the agent spoke only once to Ms. Ortiz on the telephone. As stated above, upon information and belief, that telephone call lasted only a few minutes. However, the government has not provided any information as to the time or length of the call, nor any information as to the substance of the call. In order to prepare a complete defense, the defense requests Special Agent McGinn's notes documenting the call, including its time, length, and substance.

[2] For this reason, the cases cited by the government are inapposite, as they provide analysis pursuant to only Rule 901. *See* Gov't Mot. 4-5 (citing *United States v. Ligambi*, 891 F. Supp. 2d 709, 718 (E.D. Pa. 2012) and *United States v. Fratus*, 559 F. Supp. 3d 420 (2021)). In any event, neither *Ligambi* nor *Fratus* are persuasive here. The evidence used to authenticate the voices in *Ligambi*—described by the government itself—bears no resemblance to the evidence at issue here. *See Ligambi*, 891 F. Supp. 2d at 718-19 (testifying agents had participated in surveillance of locations at which the tapes had been recorded and were able to physically identify defendants at recorded meetings, and not only could the agents personally identify the defendants' voices from their surveillance, but some of the participants of the meeting self-identified themselves); Gov't Mot. 4-5. And in *Fratus*, this Court gave great weight to the defendant's "undisputed use

identification testimony violates Ms. Ortiz's due process rights because it is a result of an inherently suggestive procedure and is unreliable. The testimony must also be precluded under Rule 701 because it is unhelpful lay opinion testimony and under Rule 403 because any minimal probative value of the identifications is substantially outweighed by unfair prejudice.

    **I.    The identification of Ms. Ortiz's voice by two officers with minimal or no direct contact with Ms. Ortiz is both a result of an inherently suggestive procedure and not reliable and would violate Ms. Ortiz's Fifth Amendment Due Process rights.**

This is not a standard identification case. For one, it concerns voice identification rather than eyewitness testimony. But the Third Circuit provided a test for due process challenges to voice identification evidence in *Virgin Islands v. Sanes*, which extended the Supreme Court's multi-factor due process standard for reliability of eyewitness testimony to voice identification testimony. 57 F.3d 338, 340-41 (3d Cir. 1995) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)).

More unusual, the two officers, Special Agent McGinn and TFO Larkin, the government is seeking to have identify Ms. Ortiz's voice were not present at the crime to hear Ms. Ortiz's voice, nor were they otherwise familiar with Ms. Ortiz outside of this case. Rather, the officers were investigating the crime of wire fraud that will be put before the jury on December 9, 2024. As part of this investigation, the officers viewed and listened to videos that will be central to the government's case-in-chief at trial, as well as unrelated videos seized from Ms. Ortiz's iCloud account. Special Agent McGinn also spoke briefly to Ms. Ortiz on two occasions, while TFO Larkin never spoke to Ms. Ortiz. In other words, the officers have identified Ms. Ortiz's voice

---

of the phone that made the calls," in addition to the agent's testimony that he had heard the defendant's "speak on multiple occasions, including at his suppression hearing." *Fratus*, 559 F. Supp. 3d at 424. Here, there clearly is no telephone number linking Ms. Ortiz to the recordings, and the testifying agents, under information and belief, have heard Ms. Ortiz speak for a fraction of the time. Not surprisingly, the government makes no attempt to equate the evidence in *Ligambi* and *Fratus* with the evidence in this case. *See* Gov't Mot. at 4-6.

utilizing *no procedure* other than by conducting a criminal investigation in which they have a stake, with little to no familiarity with Ms. Ortiz's voice. The officers' identification of Ms. Ortiz therefore is inherently unreliable and must be precluded from trial.

### A. Suggestiveness and Reliability of Voice Identification Evidence

During a criminal trial, the introduction of certain evidence "can be so unfairly prejudicial to the defendant that admitting the evidence would violate the defendant's due process rights." *United States v. Hall*, 28 F.4th 445, 453 (3d Cir. 2022). Identification evidence often falls in that category. As a result, in *Neil v. Biggers*, the Supreme Court clarified that identification evidence offends due process if it is both "impermissibly suggestive" and "unreliable." 409 U.S. 188, 196, 198-200 (1972). "The two criteria work in tandem," meaning suppression of an identification is warranted "if it was obtained pursuant to a suggestive process that in turn raises serious questions about the reliability of the resulting identification." *Hall*, 28 F.4th at 454. *Biggers* set forth a multi-factor due process standard for the reliability of eyewitness testimony: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation." *United States v. Brownlee*, 454 F.3d 131, 139 (3d Cir. 2006).

The Third Circuit later extended *Biggers*' reliability test to voice identification testimony in *Virgin Islands v. Sanes*, 57 F.3d 338 (3d Cir. 1995). In *Sanes*, the victim of the charged offenses had conversed with the defendant for ten minutes on two separate occasions. 57 F.3d at 340. Fifteen days after the second incident, the victim, when presented with an array of unidentified voice samples, selected the defendant's voice without any encouragement from the

4

officers. 57 F.3d at 340. After listening to the array three times, the victim was "certain" that the voice in the sample was the voice of the defendant. *Id.* The Third Circuit concluded that the admission of the voice identification was neither suggestive nor unreliable and did not offend due process. The procedure was not suggestive because the victim had been presented with an array of samples. And the identification was reliable because the victim "had a sufficient opportunity to view or hear her attacker on both occasions," she had "presented an accurate description of the defendant," "only fifteen days elapsed between the last attack and [the victim's] positive voice identification," and the victim had "not only listened to [the defendant] for a considerable period of time during the two incidents but testified that she engaged him in conversation in the hope that she could identify his voice." *Id.* at 340-41.

Thus, a witness may testify as to the identity of another person's voice, consistent with constitutional principles of due process, only if the testimony bears "sufficient indicia of reliability." *Sanes*, 57 F.3d at 340. But due process requires suppression of an identification that is obtained pursuant to a suggestive process that in turn raises serious questions about the reliability of the resulting identification." *United States v. Hall*, 28 F.4th 445, 454 (2022). Evidence that the witness's testimony may have been influenced by officers or prosecutors— including as a result of an overly suggestive identification procedure— can fatally undermine the testimony's reliability, precluding its admission. *See id.*

In *Hall*, the defendant challenged the admission of the testimony from his former probation officer, Edgar Leon, identifying the voice on recorded phone calls as the defendant's. *Id.* at 448. Leon's supervision of Hall had lasted nearly two years—from early 2012 until late 2013—and included a 45-minute in-person orientation meeting at Leon's office, approximately 17-18 additional meetings in the office, about five home visits, and frequent phone calls. *Id.* at

5

450. In mid-2014, an investigating officer contacted Leon in connection with a criminal investigation of Hall and asked him whether Leon could identify Hall's voice on recorded phone calls. *Id.* As the Third Circuit summarized, the correspondence between Leon and the investigating officer occurred "sporadic[ally] . . . until Hall's first trial in 2017" and "always concerned possible identification of the voice on recorded calls as Hall's, and [the investigating officer] never provided Leon with recordings that were known not to contain Hall's voice." *Id.*

Applying *Sanes*, the *Hall* Court assumed, without deciding, that the identification procedure was suggestive, as the investigating officer "asked Leon—specifically in connection with the investigation of Hall—whether Leon recognized Hall's voice on recordings obtained through the investigation." *Id.* at 454-55. Nevertheless, the Third Circuit held that the probation officer's voice identification was sufficiently reliable "in light of the substantial period of time Leon spent with Hall, both in person and over the phone." *Id.* at 453; *see also id.* at 455. To be sure, the appellate court gave weight to the fact that the witness was a "non-victim" who was "in a position to offer uniquely reliable testimony" based on his ability to learn the defendant's voice "under controlled circumstances—during his time supervising Hall as his probation officer." *Id.* at 455-56. But it was the controlled circumstances combined with the "ample opportunity to hear and pay attention to Hall's voice over multiple conversations" that allowed the Third Circuit to find that the voice identification satisfied the *Sanes* factors and requirements of due process. *Id.* at 456.[3]

---

[3] The defendant in *Hall* further argued that the voice identifications were unreliable because they were too removed from the contact between him and his probation officer. The *Hall* Court disagreed "in light of the 'degree of contact'" between them. *Id.* at 456 n.6.

### B. The officers utilized no identification procedure, and their identification of Ms. Ortiz's voice is inherently suggestive.

As the investigating agents *in this case*, Special Agent McGinn and TFO Larkin have every incentive to inculpate the charged defendant. Upon information and belief, the officers did not use any formal identification procedure to insulate the inherent suggestiveness of their own identifications of Ms. Ortiz's voice.[4] Rather, in the course of their investigation of Ms. Ortiz, the officers viewed the bag videos and decided that the voice in the videos was that of Ms. Ortiz. This is a far cry from the voice sample array presented to the victim in *Sanes* or the double-blind procedure routinely used for witness identification of suspects in lineups and photo arrays.[5] Indeed, at trial, the agents will not identify Ms. Ortiz's voice from an array of unidentified voices, and, upon information and belief, there will be no offer of proof indicating that the agents can distinguish Ms. Ortiz's voice from others.

### C. The officers' identification of Ms. Ortiz's voice is not reliable.

The lack of foundation supporting the officers' identification in this case renders it utterly unreliable. In both *Sanes* and *Hall*, the Third Circuit grounded its holding that the identification in each case was reliable on the significant prior contact between the person making the identification and the defendant. *See Sanes*, 57 F.3d at 341 ("Ms. Velez not only listened to her attacker for a considerable period of time during the two incidents but testified that she engaged

---

[4] The government has not provided any information concerning these identifications. For example, defense counsel has received no information about when the officers viewed the videos or their level of certainty as to their identification of Ms. Ortiz.

[5] As noted, the Third Circuit in *Hall* assumed without deciding that the identification procedure in that case—the investigating officer's questioning of the probation officer, specifically in connection with the investigation of the defendant, whether he recognized the defendant's voice on recordings obtained through the investigation—was suggestive. 28 F.4th at 454. Without a third party, this case is even more suggestive, as it is the investigating officers themselves making the identification.

7

him in conversation in the hope that she could identify his voice[.]"); *Hall*, 28 F.4th at 456 ("Leon had ample opportunity to hear and pay attention to Hall's voice over the course of their multiple conversations."). Indeed, in *Hall*, it was the crux of its holding: "Because Leon's identification of Hall's voice was sufficiently reliable in light of the substantial period of time Leon spent with Hall, both in person and over the phone, allowing the jury to hear Leon's identification testimony did not offend due process." 28 F.4th at 453.

*Sanes* and *Hall* thus dictate that the voice identifications in this case are insufficiently reliable to satisfy the requirements of due process. In contrast to the two years of phone and in-person meetings in *Hall*, or even to the two ten-minute conversations (one of which was just fifteen days before the identification) in *Sanes*, the officers' contact with Ms. Ortiz is startingly brief. Special Agent McGinn spoke with Ms. Ortiz on the phone *once*, on February 8, 2023. That call, upon information and belief, lasted just a few minutes, during which time Ms. Ortiz, for the most part, refused to speak with the agent. Special Agent McGinn was also present during Ms. Ortiz's self-surrender on January 12, 2024.[6] Upon information and belief, the process of Ms. Ortiz's self-surrender took approximately ten minutes; after Ms. Ortiz's fingerprints were taken, Special Agent McGinn escorted Ms. Ortiz to the basement of the FBI office, where she was given to the Marshalls. During that time, Ms. Ortiz spoke just a few sentences to Special Agent McGinn. Such limited opportunity to hear Ms. Ortiz's voice renders any identification by Special Agent McGinn and TFO Larkin highly unreliable.

---

[6] As discussed above, the government indicates that TFO Larkin also met with Ms. Ortiz at the FBI office during her processing. Gov't Mot. 6. Upon information and belief, TFO Larkin in fact was not present when Ms. Ortiz self-surrendered.

8

Compounding that unreliability is the length of time between the two instances of contact and the trial, on December, 9, 2024.[7] Nearly *two years* will have elapsed between Special Agent McGinn's phone call with Ms. Ortiz at the time of the trial in December. And Ms. Ortiz's self-surrender will have occurred approximately *one year* before the agents identify her voice. It strains logic to suggest that Special Agent McGinn could identify Ms. Ortiz's voice on a video recording based on such distant and limited dialogue. *See Hall*, 28 F.4th at 456 n.6 ("Hall also suggests that Leon's identifications of his voice were unreliable because they occurred too long after their contacts with one another. We disagree *in light of the 'degree of contact'* between Hall and Leon." (emphasis added)). Nothing about the officers' prior limited experience with Ms. Ortiz indicates that the suggestive identification is nonetheless reliable.[8]

## II.  The officers' opinion testimony that identifies Ms. Ortiz's voice in the bag videos, which the jury will be able to see and evaluate themselves, should also be excluded as improper lay witness testimony.

The Court should also exclude the agents' testimony on evidentiary grounds because the jury will view and hear the same videos as the officers and will be able to make their own determination about whether the voice in the bag videos is that of Ms. Ortiz. It is the jury's job to decide whose voice is in the videos; law enforcement should not usurp their role. Allowing a police officer to opine on this ultimate issue risks "invading the province of the jury and unfairly

---

[7] Again, defense counsel has received no information as to any prior identifications made by the officers, including their time and date, and, therefore, cannot speak to the length of time between Special Agent McGinn's contact with Ms. Ortiz and his identification.

[8] The government proffers that the officers will additionally base their identification on review of videos retrieved from Ms. Ortiz's iCloud account in which her face is visible while she is speaking. Gov't Mot. 6. But comparing one video to another is irrelevant to the officers' actual familiarity—whether in-person or by telephone—with Ms. Ortiz. As discussed *infra*, the jury itself is capable of comparing the voices in the videos, and, in fact, is the proper decider of this issue.

prejudicing" Ms. Ortiz." *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993). Special Agent McGinn's and TFO Larkin's testimony is therefore not appropriate lay opinion testimony under Federal Rule of Evidence 701 and must be excluded.

Rule 701 "permits a non-expert witness to offer her opinion to the jury if, and only if, her testimony is: '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) (quoting Fed. R. Evid. 701). "If the testimony fails to meet any one of the three foundational requirements, it should not be admitted." *Id.*

To be "helpful" under Rule 701(b), an opinion must "aid[ ] or clarify[y] an issue that the jury would not otherwise be as competent to understand." *Id.* at 292 (internal quotation marks omitted). But "where a witness is not in a better position than the jurors to form an opinion or make an inference, the witness's opinion is inadmissible under Rule 701(b)." *Id.* The reasoning behind the rule is sound: a witness who has "some personal [first-hand] knowledge" of "a particular event" may "describ[e] something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations." *Id.* (internal quotation marks omitted). On the other hand, "the rule is carefully designed to exclude lay opinion testimony that amounts to little more than choosing up sides, or that merely tells the jury what result to reach." *Id.* (internal quotation marks omitted). Thus, the "nub" of the second foundation requirement of Rule 701 is "to exclude testimony where the witness is no better suited than the jury to make the judgment at issue." *Id.* at 293.

What makes a lay witness best suited to offer identification testimony? The Third Circuit has explained that "[l]ay opinion testimony that aids in the identification of suspects is

10

particularly valuable where . . . the lay witnesses are able to make the challenged identifications based on their familiarity with characteristics of the defendant not immediately observable by the jury at trial." *Id.* at 297 (internal quotation marks and citation omitted). "In other words, lay witness testimony is permissible where the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." *Id.* (internal quotation marks and citation omitted).

Thus, in the eyewitness context, courts routinely have found that testimony about the identity of someone can be helpful to a jury only where the witness has intimate familiarity with the defendant. *See Fulton*, 837 F.3d at 298 ("The helpfulness of this type of testimony depends on the closeness of the contact. Simply stated, the more familiar a witness is with the suspect's appearance, the more useful her identification testimony is to the jury." (internal quotations omitted)); *United States v. Henderson*, 68 F.3d 323, 326 (9th Cir. 1995) ("[W]e require a lay witness to have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful."); *United States v. Jackman*, 48 F.3d 1, 4–5 (1st Cir. 1995) ("We agree that such testimony is admissible, at least when the witness possesses sufficiently relevant familiarity with the defendant that the jury cannot also possess, and when the photographs are not either so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification."); *United States v. Beck*, 418 F.3d 1008, 1014 (9th Cir. 2005) (whether lay opinion is helpful depends on a totality of the circumstances including witness's "[f]amiliarity with the defendant's appearance at the time the crime was committed" and "whether the witness knew the defendant over time and in a variety of circumstances, such that the witness's lay identification testimony offered to the jury a perspective it could not acquire in its limited exposure to the defendant" (internal quotation marks omitted)); *United States v.*

*Thompson*, No. 10-CR-0004, 2010 WL 1253526, at *2 (N.D. Okla. Mar. 19, 2010) ("In this case, there is no reason that the officers would be in a better position to identify the defendant based on a comparison of the surveillance photographs and videos and defendant's appearance than the jury would be. Therefore, the officers may not testify that defendant is the same person as in the surveillance videos and photographs."). Indeed, "the more familiar a witness is with a suspect's appearance, the more useful her identification testimony is to the jury." *Fulton*, 837 F.3d at 298. This is because, "[a]t least in theory, a witness who is intimately familiar with a defendant's appearance can perceive similarities and differences that jurors might not notice." *Id.*

In *Fulton*, the defendant, Rahman Fulton, had been charged with bank robbery and related offenses after investigators eliminated another individual, Ricardo Barnes, as a suspect. *Id.* at 284, 289. At trial, two officers—including the FBI special agent assigned to the case—"both offered their opinions about whether Fulton or Barnes' appearance better matched the robber" in a surveillance video capturing footage of the robbery. *Id.* at 295-96. The officers provided testimony concerning the physical appearance of the suspect in the video, Fulton, and Barnes, and compared photographs of Fulton and Barnes with the surveillance video. *Id.* at 296.

The Third Circuit held that the officers did not have sufficient familiarity with the appearance of Barnes or Fulton to assist the jury. *Id.* at 299. Neither officer had familiarity with Barnes or Fulton outside of the criminal case, and their in-person interactions had been "very limited." *Id.* Ultimately, the officers had "assumed the role of juror in comparing photographs of Barnes and Fulton to the surveillance footage and concluding Fulton looked more like the robber than Barnes," performing "exactly the function Rule 701 is designed to prevent." *Id.*

Here too, because the officers have such limited familiarity with Ms. Ortiz, their identification testimony based on a comparison of videos would usurp the role of the jury. As

discussed above, under information and belief, TFO Larkin has had no contact with Ms. Ortiz to establish any direct familiarity with her voice. And Special Agent McGinn minimal contact—a brief telephone call nearly *two years ago* and a brief in-person encounter nearly *one year ago*—is woefully deficient to establish the intimate familiarity required by Rule 701. The government has provided no other indication the officers know anything specific about Ms. Ortiz's voice that the jury could not hear for themselves when they view and hear both the bag videos and the videos in which Ms. Ortiz's face appears. *See, e.g.*, *United States v. Overton*, No. 20-120-1, 2024 WL 1973514, at *8 (W.D. Pa. May 3, 2024) ("The Government also intends to introduce recorded post-arrest prison calls to allow the jury to compare Defendant's voice in the prison calls with the voice in the recorded phone calls at issue in his Motion."). Because the officers possess no information making them better able to identify Ms. Ortiz's voice than the jury, their testimony would not be helpful to the jury and must be excluded pursuant to Rule 701.

### III.  The officers' testimony should be excluded under Rule 403.

Special Agent McGinn and TFO Larkin's testimony must also be excluded under Federal Rule of Evidence 403. "Rule 403 allows relevant evidence to be excluded when its probative value is substantially outweighed by the potential for unfair prejudice." *United States v. Lacerda*, 958 F.3d 196, 223 (3d Cir. 2020). Here, the probative value of the officers' testimony is severely undermined by its unreliability, and it is severely prejudicial because juries assign great weight to both witness identifications and law enforcement testimony.

Lay opinion testimony by law enforcement raises special concerns about unfair prejudice. "[W]hen a jury hears that an agent's opinion is based on the total investigation, there is a risk that it may improperly defer to the officer's opinion, thinking his knowledge of pertinent facts more extensive than its own." *United States v. Garcia*, 413 F.3d 291, 215 (2d Cir. 2005). In

13

addition, lay opinion identification testimony by law enforcement may "increase the possibility of prejudice to the defendant" because it informs the jury that the defendant is "a person subject to a certain degree of police scrutiny." *United States v. Butcher*, 557 F.2d 666, 669 (9th Cir. 1977).

The prejudice in this case would be substantial and outweigh whatever limited probative value the testimony would provide. To start, the testimony combines two overpowering elements: law enforcement witnesses and witness identification. *See Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (Brennan, J., dissenting) (noting there is "almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!'"); *Garcia*, 413 F.3d at 215. In addition, Ms. Ortiz would be unfairly prejudiced when the jury hears the basis of Special Agent McGinn's familiarity with her voice: a phone call in furtherance of his criminal investigation and Ms. Ortiz's processing following her arrest. But the jury need not be so prejudiced; as discussed above, the jurors can identify Ms. Ortiz's voice on their own, obviating the need for the officers' identification. The officers' identification testimony therefore must be excluded pursuant to Rule 403.

Respectfully submitted,

*/s/ Jesse Smith*
JESSE SMITH
Assistant Federal Defender


*/s/ Nancy MacEoin*
NANCY MACEOIN
Assistant Federal Defender

## CERTIFICATE OF SERVICE

We, Jesse Smith and Nancy MacEoin, Assistant Federal Defenders, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that we have filed and served a copy of the Defendant's Response to Government's Motion to Admit Opinion Testimony Identifying the Speaker in Recorded Conversations by electronic case filing notification upon Meghan Claiborne, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106, and via electronic mail at Meghan.Claiborne@usdoj.gov.

                                                       /s/ Jesse Smith
                                                       JESSE SMITH
                                                       Assistant Federal Defender

                                                       /s/ Nancy MacEoin
                                                     NANCY MACEOIN
                                                     Assistant Federal Defender

DATE:  November 26, 2024